IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------------------X
TONYA HERBIN, JENNIFER TABOR, and BRETT : 
TYSON, individually and on behalf of all others similarly : **[JURY TRIAL DEMANDED]**
situated, :
 : **CIVIL ACTION NO.**
                       Plaintiffs, :
      - against - :
 :
THE PNC FINANCIAL SERVICES GROUP, INC. and :
PNC BANK, N.A., :
 :
                     Defendants. X
---------------------------------------------------------------------------

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Tonya Herbin, Jennifer Tabor, and Brett Tyson (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, as class representatives, by their attorneys, Outten & Golden LLP, Shavitz Law Group, P.A., and Carlson Lynch, LLP, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## PRELIMINARY STATEMENT

1. This lawsuit seeks to recover unpaid overtime compensation for Plaintiffs and similarly situated telephone customer service representatives, including but not limited to Customer Service Representative, Sales Representatives, Customer Service and Support Representatives, Customer Support Representatives, and/or other similar positions with different titles (collectively, "CSRs"), who have worked for Defendants The PNC Financial Services Group, Inc. ("PNC Financial") and/or PNC Bank, N.A. ("PNC Bank") (collectively, "PNC" or

"Defendants") throughout the United States, whether in call centers (sometimes referred to as a "Customer Care Centers") or "virtually" (outside of a call center and/or from home).

2. Plaintiffs bring this action on behalf of themselves and other similarly situated CSRs who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), including the collective action provision of 29 U.S.C. § 216(b), to remedy PNC's violations of the overtime provisions of the FLSA.

3. Plaintiffs also bring this action on behalf of themselves and other similarly situated CSRs who worked in Pennsylvania pursuant to Federal Rule of Civil Procedure 23 to remedy PNC's violations of the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §§ 333.101 *et seq.* (the "Pennsylvania Wage Laws").

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Plaintiffs' state law claims are so closely related to their claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

6. The Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because PNC regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9. PNC regularly conducts business in Pennsylvania and are subject to personal jurisdiction in Pennsylvania.

## THE PARTIES

**Plaintiffs**

*Plaintiff Tonya Herbin*

10. Plaintiff Tonya Herbin ("Herbin") is a resident of Allegheny County in the Commonwealth of Pennsylvania.

11. PNC employed Herbin as a non-exempt CSR in its Pittsburgh, Pennsylvania call center from approximately April 2015 to approximately November 2017.

12. Pursuant to PNC's policy, pattern, and/or practice, Herbin regularly worked more than 40 hours per workweek as a CSR but was not paid for all hours that she worked, including hours that she worked in excess of 40 in a workweek. Specifically, at all times relevant, Herbin routinely worked approximately one hour and forty-five minutes off-the-clock, overtime hours per week.

13. At all times relevant, Herbin was a covered "employee" within the meaning of the FLSA and the Pennsylvania Wage Laws.

14. PNC failed to keep accurate records of the hours that Herbin worked as a CSR.

15. Herbin has expressed her consent to make these claims against PNC by filing a written consent form, pursuant to 29 U.S.C. § 216(b). *See* Ex. A.

*Plaintiff Jennifer Tabor*

16. Plaintiff Jennifer Tabor ("Tabor") is a resident of Alleghany County in the Commonwealth of Pennsylvania.

17. PNC employed Tabor as a non-exempt CSR in PNC's Pittsburgh, Pennsylvania call center from approximately November 2017 to approximately February 2018, and virtually from home in Pittsburgh from approximately February 2018 to approximately July 2018.

18. Pursuant to PNC's policy, pattern, and/or practice, Tabor regularly worked more than 40 hours per workweek as a CSR but was not paid an overtime premium for all hours over 40 that she worked. Specifically, at all times relevant, Tabor routinely worked approximately three off-the-clock overtime hours per workweek.

19. At all times relevant, Tabor was a covered "employee" within the meaning of the FLSA and the Pennsylvania Wage Laws.

20. PNC failed to keep accurate records of the hours that Tabor worked as a CSR.

21. Tabor has expressed her consent to make these claims against PNC by filing a written consent form, pursuant to 29 U.S.C. § 216(b). *See* Ex. B.

*Plaintiff Brett Tyson*

22. Plaintiff Brett Tyson ("Tyson") is a resident of Chester County in the Commonwealth of Pennsylvania.

23. PNC employed Tyson as a non-exempt CSR virtually from home in Pittsburgh, Pennsylvania from approximately April 2018 to approximately November 2018.

24. Pursuant to PNC's policy, pattern, and/or practice, Tyson regularly worked more than 40 hours per workweek as a CSR but was not paid an overtime premium for all hours over 40 that he worked. Specifically, at all times relevant, Tyson routinely worked approximately three off-the-clock, overtime hours per workweek.

25. At all times relevant, Tyson was a covered "employee" within the meaning of the FLSA and the Pennsylvania Wage Laws.

26. PNC failed to keep accurate records of the hours that Tyson worked as a CSR.

27. Tyson has expressed his consent to make these claims against PNC by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. C.

**<u>Defendants</u>**

*Defendant PNC Financial*

28. PNC Financial is incorporated in Pennsylvania and maintains its corporate headquarters in Pittsburgh, Pennsylvania.

29. At all times relevant, PNC Financial employed Plaintiffs and similarly situated employees within the meaning of the FLSA and Pennsylvania Wage Laws.

30. At all times relevant, PNC Financial maintained control, oversight and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

31. PNC Financial applies the same employment policies, practices, and procedures to all CSRs nationwide.

32. PNC Financial is a covered "employer" within the meaning of the FLSA and Pennsylvania Wage Laws and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

33. At all times relevant, PNC Financial's annual gross volume of sales made or business done was not less than $500,000.00.

*Defendant PNC Bank*

34. PNC Bank is a wholly owned subsidiary of PNC Financial.

35. PNC Bank is incorporated in Pennsylvania and maintains its corporate headquarters in Pittsburgh, Pennsylvania.

36. At all times relevant, PNC Bank employed Plaintiffs and similarly situated employees within the meaning of the FLSA and the Pennsylvania Wage Laws.

37. At all times relevant, PNC Bank maintained control, oversight and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

38. PNC Bank is a covered "employer" within the meaning of the FLSA and Pennsylvania Wage Laws, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

39. At all times relevant, PNC Bank's annual gross volume of sales made or business done was not less than $500,000.00.

40. Upon information and belief, PNC Bank is the entity listed on Plaintiffs' W-2s.

## FLSA COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who worked as CSRs for PNC nationwide at any time since December 29, 2015 (the "FLSA Collective").

42. Upon information and belief, there are approximately more than 1,000 current and former CSRs that are similarly situated to Plaintiffs who were denied overtime compensation.

43. Defendants are jointly and severally liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs and members of the FLSA Collective.

44. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      (a)      willfully failing to pay Plaintiffs and members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours per workweek;

      (b)      willfully failing to record all of the time that their employees, including Plaintiffs and members of the FLSA Collective have worked for the benefit of PNC; and

      (c)      willfully requiring Plaintiffs and members of the FLSA Collective to perform work in excess of 40 hours per workweek by performing uncompensated off-the-clock work.

45. All of the work that Plaintiffs and members of the FLSA Collective members have performed as CSRs has been assigned by PNC and/or PNC has been aware of all of the work that Plaintiffs and members of the FLSA Collective have performed as CSRs.

46. PNC is aware or should have been aware that federal law required PNC to pay Plaintiffs and members of the FLSA Collective overtime premiums for *all* hours worked in excess of 40 per workweek.

47. Members of the FLSA Collective are readily identifiable and locatable through the use of PNC's records.

48. Members of the FLSA Collective should be notified of this action and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b).

49. Unless the Court promptly issues such a notice, members of the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to recover compensation to which they are entitled, and which PNC has unlawfully withheld from them.

## **PENNSYLVANIA CLASS ALLEGATIONS**

50. Plaintiffs bring the Second Cause of Action on their own behalf and as a class action, pursuant to Federal Rule of Civil Procedure 23(a) and (b), on behalf of the following class of persons:

> All CSRs who are currently or have been employed by PNC in Pennsylvania at any time between December 29, 2015 and the date of final judgment in this matter (the "Pennsylvania Rule 23 Class").

51. Excluded from the Pennsylvania Rule 23 Class is PNC, PNC's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in PNC; the Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Pennsylvania Rule 23 Class.

52. The members of the Pennsylvania Rule 23 Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within PNC's sole control.

53. Upon information and belief, the size of the Pennsylvania Rule 23 Class is at least 40 individuals.

54. PNC has acted or refused to act on grounds generally applicable to the Pennsylvania Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Pennsylvania Rule 23 Class as a whole.

55. Common questions of law and fact exist as to the Pennsylvania Rule 23 Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

8

  (a) whether PNC violated the Pennsylvania Wage Laws;

  (b) whether PNC failed and/or refused to pay Plaintiffs and members of the Pennsylvania Rule 23 Class overtime wages for all hours worked in excess of 40 per workweek in violation of and within the meaning of the Pennsylvania Wage Law, 43 Pa. Cons. Stat. Ann. § 333.104(c);

  (c) whether PNC's policy of failing to pay Plaintiffs and members of the Pennsylvania Rule 23 Class proper overtime compensation was done willfully or with reckless disregard of the law;

  (d) whether PNC failed to keep true and accurate time records of all hours worked by Plaintiffs and members of the Pennsylvania Rule 23 Class;

  (e) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and

  (f) the nature and extent of class-wide injury and the measure of damages for those injuries.

56. Plaintiffs' claims are typical of the claims of the Pennsylvania Rule 23 Class they seek to represent.

57. Plaintiffs and members of the Pennsylvania Rule 23 Class work or have worked for PNC as CSRs and have been subjected to PNC's policy, pattern or practice of requiring CSRs to perform off-the-clock work, but not compensating them for all hours worked.

58. Plaintiffs and members of the Pennsylvania Rule 23 Class enjoy the same statutory rights under the Pennsylvania Wage Laws, including to be paid for all hours worked and to be paid overtime wages.  Plaintiffs and members of the Pennsylvania Rule 23 Class have all sustained similar types of damages because of PNC's failure to comply with the Pennsylvania Wage Laws.  Plaintiffs and members of the Pennsylvania Rule 23 Class have all been injured in that they have been under-compensated due to PNC's common policies, practices, and patterns of conduct.

59. Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Rule 23 Class. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the Pennsylvania Rule 23 Class to represent its interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Pennsylvania Rule 23 Class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class. Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Pennsylvania Rule 23 Class. Plaintiffs understand that to provide adequate representation, they must be informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify at deposition and/or trial.

60. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the Pennsylvania Rule 23 Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Pennsylvania Rule 23 Class have been damaged and are entitled to recovery because of PNC's violations of the Pennsylvania Wage Laws, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Pennsylvania Rule 23 Class are not *de minimis*, such damages are small compared to the expense and burden

of individual prosecution of this litigation.  The individual Plaintiffs lack the financial resources to conduct a thorough examination of PNC's timekeeping and compensation practices and to vigorously prosecute a lawsuit against PNC to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about PNC's practices.

62. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## COMMON CLASS AND COLLECTIVE FACTUAL ALLEGATIONS

63. Plaintiffs and the members of the FLSA Collective and Pennsylvania Rule 23 Class (collectively, "Class Members") worked for PNC as CSRs.

64. PNC employs CSRs to work virtually at home or at their call center locations throughout the United States.  CSRs are responsible for, *inter alia*, answering customer questions and providing customer service via telephone regarding financial products and services such as checking accounts, savings accounts, and loans.

65. PNC has maintained control, oversight, and direction over Plaintiffs and similarly situated CSRs, including the ability to hire, fire, and discipline CSRs.

66. PNC classifies CSRs as non-exempt employees under the FLSA and state law, including the Pennsylvania Wage Laws.

67. Pursuant to a uniform, companywide policy, pattern and practice, PNC failed to accurately track or record the actual hours worked by CSRs.  PNC furthered this wrongful policy by requiring CSRs to regularly work more than 40 hours per workweek without recording all overtime hours worked.

68. PNC routinely required CSRs to work off-the-clock uncompensated overtime hours.

69. PNC is aware that CSRs are required to work, and do work, in excess of 40 hours per workweek to fulfill their job duties. For example, PNC supervisors know that CSRs routinely work off-the-clock because they instruct CSRs not to clock in for the start of their shift until CSRs boot up their computers, log in to their desktops, load all necessary programs and software, and read all necessary emails and reference materials. These tasks are required for CSRs to take calls such that they are "call ready" at the start of their scheduled shifts.

70. Nevertheless, PNC enforces a strict policy prohibiting CSRs from recording all hours worked, including overtime hours worked.

71. Due to PNC's uniform policies, Plaintiffs frequently worked over 40 hours per workweek without receiving premium overtime pay for all the hours they worked.

72. Throughout the relevant period, it was PNC's policy to deprive Plaintiffs of all their earned overtime wages in violation of the FLSA and Pennsylvania Wage Laws. To avoid paying Plaintiffs overtime premiums for all the hours Plaintiffs worked in excess of 40 per workweek, PNC willfully required CSRs to work "off-the-clock."

73. PNC apply the same policies and practices with respect to "off-the-clock" work and overtime pay to CSRs nationwide.

74. PNC's systematic failure and refusal to pay Plaintiffs and all other similarly situated CSRs for all hours worked over 40 in a workweek violates the FLSA and applicable state laws, including the Pennsylvania Wage Laws.

75. By agreement of the parties, dated December 17, 2018, the statute of limitations for FLSA and state wage and hour claims on behalf of Plaintiffs and similarly situated CSRs nationwide was tolled from December 17, 2018 through June 3, 2019.

76. PNC classified Plaintiffs and Class Members as hourly non-exempt workers.

77. PNC's policy and practice were that Plaintiffs and Class Members were expected to arrive at work and commence working before their scheduled shift, perform work during meal breaks, and continue working after their scheduled shift ended, which resulted in Plaintiffs and Class Members consistently working over 40 hours per workweek.

78. PNC failed to pay Plaintiffs and Class Members all overtime compensation due and owing to them for the hours they worked over 40 in a workweek.

79. Plaintiffs' and Class Members' time worked is not tracked until they clock in on a computer. However, Plaintiffs and Class Members perform and/or performed work without compensation before they clock in on their computers. Additionally, Plaintiffs and Class Members perform and/or performed work during certain uncompensated meal breaks, and after clocking out at the end of their scheduled shifts.

80. PNC was aware that Plaintiffs and Class Members worked more than 40 hours per workweek, yet PNC failed to pay them an overtime premium for all hours worked over 40 in a workweek pursuant to a common policy and plan that has violated their right under the FLSA and Pennsylvania Wage Laws.

81. PNC did not keep accurate records of hours worked by Plaintiffs or Class Members. That is, although Plaintiffs and Class Members routinely worked more than 40 hours per workweek, PNC did not record those hours.

82. As part of their regular business practice, PNC intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA and Pennsylvania Wage Laws. PNC's policy and pattern or practice includes but is not limited to:

   (a) willfully failing to record all the time that CSRs, including Plaintiffs and Class Members, worked for the benefit of PNC;

   (b) willfully failing to keep payroll records as required by the FLSA and Pennsylvania Wage Laws;

   (c) willfully requiring Plaintiffs and Class Members to work "off-the-clock;" and

   (d) willfully failing to pay CSRs, including Plaintiffs and Class Members, overtime wages for all the hours that they worked in excess of 40 per workweek.

83. PNC was or should have been aware that the FLSA and Pennsylvania Wage Laws required them to pay their CSRs premium overtime pay for all hours worked in excess of 40 per week.

84. PNC's failure to pay Plaintiffs and Class Members overtime wages for their work in excess of 40 hours per workweek was willful, intentional, and in bad faith.

85. PNC's unlawful conduct has been widespread, repeated, and consistent.

### FIRST CAUSE OF ACTION
### FLSA – Unpaid Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

86. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

87. At all relevant times, Plaintiffs and the FLSA Collective members were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

88. At all relevant times, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

89. At all relevant times, Plaintiffs and the FLSA Collective members were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

90. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to PNC.

91. Plaintiffs and the FLSA Collective members are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

92. PNC required Plaintiffs and the FLSA Collective members to work in excess of 40 hours per workweek and willfully failed to compensate Plaintiffs and FLSA Collective members for all of the time worked in excess of 40 hours per workweek, at a rate of at least one and one-half times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

93. Plaintiffs have expressed their consent to make these claims against PNC by filing written consent forms, pursuant to 29 U.S.C. § 216(b).

94. PNC has failed to make a good faith effort to comply with the FLSA with respect to their compensation to Plaintiffs and the FLSA Collective.

95. Because PNC's violations of the FLSA was willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255, as may further be enlarged by agreements between the parties.

96. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and the FLSA Collective have incurred damages, and Defendants, jointly and severally, are

indebted to Plaintiffs and the FLSA Collective in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Pennsylvania Wage Laws: Unpaid Overtime
### (Brought on behalf of Plaintiffs and
### the Pennsylvania Rule 23 Class)

97. Plaintiffs reallege and incorporate by reference herein all allegations in all preceding paragraphs.

98. PNC engaged in a widespread pattern, policy, and practice of violating the Pennsylvania Wage Laws, as detailed in this Class and Collective Action Complaint.

99. At all times relevant, Plaintiffs and the Pennsylvania Rule 23 Class members have been employees and PNC has been employers within the meaning of the Pennsylvania Wage Laws.

100. Plaintiffs and the Pennsylvania Rule 23 Class members are covered by Pennsylvania Wage Laws and accompanying regulations.

101. PNC employed Plaintiffs and the Pennsylvania Rule 23 Class members.

102. PNC violated the Pennsylvania Wage Laws, including 43 Pa. Cons. Stat. § 333.104(c), in relevant part, by failing to pay overtime compensation to Plaintiffs and the Pennsylvania Rule 23 Class at a rate not less than one and one-half times the employee's regular rate, for all hours worked over 40 per workweek.

103. PNC violated the Pennsylvania Wage Laws, including 43 Pa. Cons. Stat. § 333.108, by failing to keep, make, preserve, maintain, and furnish accurate records of time worked by and the wages paid to Plaintiffs and the Pennsylvania Rule 23 Class members.

104. PNC's violations of the Pennsylvania Wage Laws have been willful and intentional.

105. Due to PNC's violations of the Pennsylvania Wage Laws, Plaintiffs and the Pennsylvania Rule 23 Class members are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, reasonable attorneys' fees and costs, penalties, and pre-judgment and post-judgment interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, seek the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all CSRs and similarly situated employees who are presently, or have at any time since December 29, 2015, up through and including the date of this Court's issuance of court-supervised notice, worked for PNC. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Certification of the Pennsylvania Rule 23 Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as Class Representatives for the Pennsylvania Rule 23 Classes, and counsel of record as Class Counsel;

E. Unpaid overtime pay and any penalties and other damages as permitted by law pursuant to the Pennsylvania Wage Laws;

F.     Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful;

G.     Pre-judgment interest and post-judgment interest as provided by law;

H.     Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining PNC from continuing their unlawful practices;

I.     Reasonable incentive award to compensate Plaintiffs for the time and effort they have spent and will spend protecting the interests of other CSRs, and the risks they are undertaking;

J.     Reasonable attorneys' fees, costs, and expenses; and

K.     Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:
    June 14, 2019

Respectfully submitted,

By: */s/ Gary F. Lynch*

**CARLSON LYNCH, LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243

**OUTTEN & GOLDEN LLP**
Justin M. Swartz*
Cheryl-Lynn D. Bentley*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
Paolo Meireles*
Logan A. Pardell*
951 Yamato Road
Boca Raton, Florida 33431
Telephone: (561) 447-8888

* *Pro hac vice* motions forthcoming

*Attorneys for Plaintiffs and the Putative Class and Collective*