# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TONYA HERBIN, JENNIFER TABOR, and BRETT TYSON, individually and on behalf all others similarly situated, | : : : : : : | |
|  | : | Case No.  2:19-cv-00696-CB |
| Plaintiffs, | : : | |
| v. | : : | |
| THE PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A., | : : : | |
| Defendants. | : : | |

|  |  |  |
|---|---|---|
| CASEY MINOR and ALEXIS YARBROUGH, individually and on behalf all similarly situated individuals, | : : : : | |
|  | : | Case No.  2:20-cv-00058-CB |
| Plaintiffs, | : : | |
| v. | : : | |
| PNC BANK, N.A., | : : | |
| Defendant. | : : | |

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT, AUTHORIZE NOTICE MAILING, AND DISMISS WITH PREJUDICE

Plaintiffs Tonya Herbin, Jennifer Tabor, Brett Tyson, Casey Minor, and Alexis Yarbrough (collectively, "Plaintiffs") hereby request that the Court grant approval of a settlement reached by the parties, as further set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion to Approve Collective Action Settlement, Authorize Notice Mailing, and Dismiss with Prejudice and the Declarations of Justin M. Swartz, Matthew L. Turner, and Rod M. Johnston, filed concurrently with this Motion.  A Proposed Order is attached as Exhibit 2 to the Declaration of Justin M. Swartz.

Respectfully submitted,
By: */s/ Justin M. Swartz*

**OUTTEN & GOLDEN LLP**
Justin M. Swartz*
Chauniqua D. Young**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-mail: jms@outtengolden.com
E-mail: cyoung@outtengolden.com

**CARLSON LYNCH, LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
E-mail: glynch@carlsonlynch.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
Paolo Meireles*
Logan A. Pardell*
951 Yamato Road
Boca Raton, Florida 33431
Telephone: (561) 447-8888
E-mail: gshavitz@shavitzlaw.com
E-mail: pmeireles@shavitzlaw.com
E-mail: lpardell@shavitzlaw.com

*Attorneys for the Herbin Plaintiffs and the Putative Collective*

**SOMMERS SCHWARTZ, P.C.**
Matthew L. Turner**
Rod M. Johnston*
One Towne Sq., Ste. 1700
Southfield, MI 48076
(248) 355-0300
E-mail: rjohnston@sommerspc.com
E-mail: mturner@sommerspc.com

*Admitted *Pro Hac Vice*
***Pro hac vice* motion forthcoming

*Attorneys for the Minor Plaintiffs and the Putative Collective*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on January 21, 2019 the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


By:  */s/ Justin M. Swartz*
       Justin M. Swartz

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONYA HERBIN, JENNIFER TABOR, and BRETT TYSON, individually and on behalf all others similarly situated,  :  :  :  :  : | |
| :   Plaintiffs, | Case No.  2:19-cv-00696-CB |
| :  v.  : | |
| THE PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A.,  :  : | |
| :   Defendants.  : | |

| | |
|---|---|
| CASEY MINOR and ALEXIS YARBROUGH, individually and on behalf all similarly situated individuals,  :  :  : | |
| :   Plaintiffs, | Case No.  2:20-cv-00058-CB |
| :  v.  : | |
| PNC BANK, N.A.,  :  : | |
| :   Defendant.  : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO APPROVE  COLLECTIVE ACTION SETTLEMENT, AUTHORIZE NOTICE MAILING, AND DISMISS WITH PREJUDICE**

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................. 2

I.     Factual Allegations ..................................................................................................... 2

II.    Overview of Investigation, Litigation and Settlement Negotiations .......................... 2

       A.     The *Herbin* Action ......................................................................................... 2

       B.     The *Minor* Action .......................................................................................... 3

       C.     Subsequent Settlement Negotiations................................................................ 4

SUMMARY OF THE SETTLEMENT TERMS ...................................................................... 4

I.     The Settlement Fund .................................................................................................... 5

II.    Notice Process.............................................................................................................. 5

III.   Release ......................................................................................................................... 6

IV.    Settlement Awards ....................................................................................................... 6

V.     Service Payment........................................................................................................... 7

VI.    Attorneys' Fees and Litigation Costs........................................................................... 7

VII.   Settlement Claims Administration ............................................................................... 7

ARGUMENT ........................................................................................................................... 8

I.     A One-Step Approval Process Is Standard for FLSA Settlements ............................. 5

II.    The Court Should Approve the Parties' Negotiated Settlement Agreement. ............... 9

       A.     The Settlement Agreement Is a Compromise of a Bona Fide Dispute. ............... 10

       B.     The Settlement Is Fair, Reasonable and Adequate. .............................................. 11

       C.     The Settlement Furthers the Goals of the FLSA.................................................. 14

III.   The Service Awards Should Be Approved as Fair and Reasonable. ........................... 14

IV.    The Court Should Approve the Proposed Settlement Notice and Claim Form. .......... 16

V.     The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable. .......... 16

VI.   Plaintiffs' Counsel Is Entitled to Recover Their Reasonable Costs. .................................. 21

CONCLUSION ........................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Acevedo v. Brightview Landscapes, LLC*,
    No. 13 Civ. 2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017)..............................................12

*Arrington v. Optimum Healthcare IT, LLC.*,
    No. 17 Civ. 3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018)..................................17, 19, 20

*Bettger v. Crossmark, Inc.*,
    No. 13 Civ. 2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015) ..................................................9

*Brown v. TrueBlue, Inc.*,
    No. 10 Civ. 00514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ...........................................8

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (E.D.N.Y. June 12, 2013)...........................................13

*In re Cendant Corp., Derivative Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ...................................................................................17, 18

*In re Chickie's & Pete's Wage & Hour Litig.*,
    No. 12 Civ. 6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014)......................................9, 11, 14

*Creed v. Benco Dental Supply Co.*,
    No. 12 Civ. 01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .........................................14

*Deitz v. Budget Renovations and Roofing, Inc.*,
    No. 12 Civ. 0718, 2013 WL 2338496 (M.D. Pa. May 29, 2013) .............................................12

*Espenscheid v. DirectSat USA, LLC*,
    688 F.3d 872 (7th Cir. 2012) ..................................................................................................15

*Fein v. Ditech Fin., LLC*,
    No. 16 Civ. 660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017)...............................................15

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..............................................................................................10, 11

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
    842 F.3d 215 (3d Cir. 2016)......................................................................................................9

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...........................................14

*Hubbs v. Big Lots Stores, Inc.*, 15 Civ. 01601,
    2018 WL 5264143 (C.D. Cal. July 11, 2018) .........................................................................11

iv

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ............................................................................ 20

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................... 21

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
   No. 18 Civ. 01007, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) .................... *passim*

*Keller v. TD Bank, N.A.*,
   No. 12 Civ. 5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ............. 16, 18, 20, 21

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
   No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ....................... 14

*Layton v. Percepta, LLC*,
   No. 17 Civ. 1488, 2018 WL 5492850 (M.D. Fla. Sept. 21, 2018) ..................... 13

*Leap v. Yoshida*,
   No. 14 Civ. 3650, 2016 WL 1730693 (E.D. Pa. May 2, 2016) .......................... 19

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................... 8, 9

*Matter of Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................................ 18

*In re Milos Litig.*,
   No. 08 Civ. 6666, 2010 WL 199688 (S.D.N.Y. Jan. 11, 2010) ......................... 16

*Morris v. Affinity Health Plan, Inc.*,
   No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ...................... 16

*O'Connor v. Oakhurst Dairy*,
   No. 14 Civ. 00192, 2015 WL 2452678 (D. Me. May 22, 2015) .......................... 8

*Owens v. Interstate Safety Serv., Inc.*,
   No. 17 Civ. 0017, 2017 WL 5593295 (M.D. Pa. Nov. 21, 2017) ....................... 10

*Prena v. BMO Fin. Corp.*,
   No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .......................... 8

*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013) ................................................................. 15

*Spellman v. Am. Eagle Exp., Inc.*,
   No. 10 Civ. 1764, 2011 WL 4102301 n.1 (E.D. Pa. May 18, 2011) .................... 8

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011)................................................................................ 14

*United States v. Lindow*,
  738 F.2d 1057 (9th Cir. 1984) ........................................................................... 11

**Statutes**

29 U.S.C. § 216(b) .................................................................................................. 16

## INTRODUCTION

Plaintiffs Tonya Herbin, Jennifer Tabor, Brett Tyson, Casey Minor, and Alexis Yarbrough (collectively, "Plaintiffs") and Defendants, The PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively, "PNC" or "Defendants,"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief.  The settlement resolves two pending federal court cases, *Herbin v. The PNC Financial Services Group, Inc.*, and *Minor v. PNC Bank, N.A.*[1]

The parties' settlement negotiations followed a thorough investigation by two sets of plaintiffs' counsel, motion practice, and informal mediation-related discovery.  The settlement was reached after two private mediation sessions with two respected mediators, The Honorable Kenneth Benson (Ret.) and Arthur H. Stroyd Jr., and satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement.  It resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations between experienced counsel, and provides good value to the workers whom it will benefit, especially given the risks of litigation.

Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"); (2) approving the proposed Notice of Settlement and Consent to Join and Release Form ("Notice Packet") (attached as Exhibit A to the Settlement Agreement) and directing its distribution; (3)

---

[1] As more fully set forth below, Plaintiffs Herbin, Tabor, and Tyson (the "*Herbin* Plaintiffs") filed their claim for unpaid wages in this Court on June 14, 2019 (the "*Herbin* Action"). *Herbin v. The PNC Financial Services Group, Inc.*, No. 19 Civ. 696, ECF No. 1. Plaintiffs Casey Minor and Alexis Yarbrough (the "*Minor* Plaintiffs") filed their claim for upaid wages in the Western District of Michigan Southern Division on February 12, 2019.  *Minor v. PNC Bank, N.A.* (the "*Minor* Action," together with the *Herbin* Action, the "Actions"), No. 19 Civ. 114 (W.D. Mich.). The *Minor* Action was transferred to this Court on January 14, 2020. *Minor v. PNC Bank, N.A.*, No. 20 Civ. 58, ECF No. 24.

approving Service Payments to the Plaintiffs and the Opt-in Plaintiff; (4) approving Plaintiffs'

request for attorneys' fees and expenses;  (5) incorporating the terms of the Settlement

Agreement; and (6) dismissing the Actions.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **Factual Allegations**

Plaintiffs are former employees of Defendants who worked as Customer Service

Representatives ("CSRs") for PNC in Pennsylvania and Michigan.  Swartz Decl. ¶ 15;

Declaration of Matthew L. Turner ("Turner Decl.") ¶ 9; Declaration of Rod M. Johnston

("Johnston Decl.") ¶ 9.  Defendants employ CSRs to work at home and at call center locations

throughout the United States. Swartz Decl. ¶ 15.  CSRs are responsible for answering customer

telephone calls and providing customer service related to PNC's financial products and services.

*Id.*

Plaintiffs allege that PNC required CSRs to work off-the-clock and did not pay them for

all hours worked, including for time spent booting up and shutting down their computers and

logging into computer software programs and applications, in violation of the Fair Labor

Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and various state laws. Swartz Decl. ¶ 16;

Turner Decl. ¶ 9; Johnston Decl. ¶ 9.  Defendants deny that they committed any wrongdoing and

dispute Plaintiffs' claims.  *Id.*

II.    **Overview of Investigation, Litigation and Settlement Negotiations**

A.    **The *Herbin* Action**

On October 15, 2018, counsel for the *Herbin* Plaintiffs contacted PNC to explore a

potential pre-suit resolution of CSRs' federal and state law claims.  Swartz Decl. ¶ 18.  After

---

[2] A Proposed Order is attached as Exhibit B to the Settlement Agreement and also attached as
Exhibit 2 to the Declaration of Justin M. Swartz ("Swartz Decl.") for the Court's convenience.

months of settlement discussions, the *Herbin* Plaintiffs and PNC agreed to attend a day long

mediation on April 30, 2019 with Judge Benson in Pittsburgh, Pennsylvania. *Id.* In preparation

for the mediation, the parties exchanged detailed correspondence setting forth their positions. *Id.*

¶ 19. Defendants also produced job descriptions, the *Herbin* Plaintiffs' personnel files,

workweek and payroll data for CSRs nationwide, and records showing CSRs' duties and

responsibilities and Defendants' timekeeping policies, which counsel reviewed and analyzed. *Id.*

The parties were unable to reach a resolution at the April 30th mediation and the *Herbin*

Plaintiffs filed a Class and Collective Action Complaint on behalf of themselves and similarly

situated CSRs who worked for PNC throughout the United States. *See Herbin*, No. 19 Civ. 696,

ECF No. 1.

### B.      The *Minor* Action

While the *Herbin* parties were preparing for mediation, on February 12, 2019, the *Minor*

Plaintiffs filed their Collective and Class Action Complaint, in the Western District of Michigan,

on behalf of themselves and all other similarly situated CSRs who worked for PNC. Turner

Decl. ¶ 8; Johnston Decl. ¶ 8. PNC answered the Complaint on April 29, 2019, contesting each

substantive allegation pertaining to the *Minor* Plaintiffs' off-the-clock work and asserting various

defenses, including that PNC's written timekeeping policies ensure that Plaintiffs properly record

their time and that any uncompensated time that Plaintiffs worked was *de minimis*. Turner Decl.

¶ 10; Johnston Decl. ¶ 10. On May 1, 2019, the *Minor* Plaintiffs filed a Pre-Discovery Motion

for Conditional Collective Certification and Court-Authorized Notice to Potential Plaintiffs

Pursuant to 29 U.S.C. § 216(b) (the "Conditional Certification Motion"). Turner Decl. ¶ 11;

Johnston Decl. ¶ 11. PNC opposed the Conditional Certification Motion on May 29, 2019.

Turner Decl. ¶ 11; Johnston Decl. ¶ 11. *See also* Defs. Mem. of Law In Opp. to Pls. Mot. for

3

Conditional Certification, *Minor*, No. 20 Civ. 58, ECF No. 15. The Conditional Certification

Motion was fully briefed on June 11, 2019. Turner Decl. ¶ 11; Johnston Decl. ¶ 11.

> **C.    Subsequent Settlement Negotiations**

On August 6, 2019, the *Herbin* Plaintiffs, the *Minor* Plaintiffs, and PNC participated in a

second mediation, this time before Mr. Stroyd, an experienced mediator who is well-versed in

employment law class and collective actions.  Swartz Decl. ¶ 21; Turner Decl. ¶ 17; Johnston

Decl. ¶ 17.

With the help of Mr. Stroyd, and building on the progress made before Judge Benson, the

parties reached an agreement and executed a settlement term sheet. Swartz Decl. ¶ 22.  During

the ensuing months, the parties negotiated and reached agreement on all of the settlement terms,

which were memorialized in the Settlement Agreement and fully executed on January 7, 2020.

*Id*.

## SUMMARY OF THE SETTLEMENT TERMS

**I.    The Settlement Fund**

The Settlement Agreement establishes a Gross Fund of $2,750,000.00 to settle claims

against Defendant (the "Gross Fund").  Ex. 1 (Settlement Agreement) ¶ III(B).  The Gross Fund

covers Putative Collective Members' settlement awards;[3] the employees' share of payroll taxes

arising from those awards; attorneys' fees and costs; service payments; and the fees and costs of

the Settlement Claims Administrator.  *Id*.

---

[3] The Putative Collective Members are individuals who were employed as CSRs by PNC
anywhere in the United States between August 16, 2016 through the date of full execution of the
Settlement Agreement.  Ex. 1 (Settlement Agreement) ¶ I(A).

II.     **Notice Process**

Within seven days of the Court's approval of the settlement agreement becoming a final non-appealable order, Defendants will provide the Settlement Claims Administrator with an Excel chart of the names, employee identification numbers, last known addresses, last known telephone numbers, any last known personal e-mail addresses, Social Security numbers, dates and states of employment, for Putative Collective Members.  *Id.* ¶ III(A)(1).  Upon receipt of that information, the Settlement Claims Administrator will attempt to confirm the accuracy of the addresses through the United States Postal Service's National Change of Address database and other commercially available means.  *Id.*  Within twenty-one days of the Court's approval of the settlement becoming a final non-appealable order, the Settlement Claims Administrator will send, via first class U.S. mail and e-mail, Notice Packets to Plaintiffs and Putative Collective Members along with an enclosed postage-paid return envelope.  *Id.* ¶ III(A)(2), Ex. A (Notice Packet).  The Notice Packet will inform Putative Collective Members of the terms of the settlement, the approximate amount of their individual settlement awards, and the procedure for submitting a Consent to Join and Release Form.  Ex. 1 (Settlement Agreement) ¶ III(F)(2)(c), Ex. A (Notice Packet). Putative Collective Members may return their completed Consent to Join and Release Form by e-mail, facsimile, or through an online portal, and must do so within 60 days in order to participate in the settlement.  Ex. 1 (Settlement Agreement) ¶ IIII(A)(3).

The Settlement Claims Administrator will attempt to obtain a correct address for any Putative Collective Member for whom a Notice Packet is returned as undeliverable, using the Putative Collective Members' social security numbers and last known address, and will re-mail notice to those individuals.  *Id.* ¶ III(A)(2).

5

Within seven days after the close of the Opt-in Period, the Settlement Claims Administrator will provide the Parties with a list of all Qualified Claimants.[4]  *Id.* ¶ III(A)(10). Within seven days after receiving the list of Qualified Claimants, PNC will pay to the Settlement Fund the total amount necessary to satisfy all Individual Payments to the Qualified Claimants, and the total amount necessary to pay the employer's share of payroll taxes arising out of the Individual Payments to Qualified Claimants.  *Id.* ¶ III(G)(1).  Within seven days after PNC makes such payment, the Settlement Claims Administrator will mail each Qualified Claimant a settlement check.  *Id.* ¶ III(G)(2).  One hundred and fifty days after that mailing, any amounts of the Net Fund not claimed by a Plaintiff or Putative Collective Member will revert to Defendant. ¶ III(G)(5).

## III.  <u>Release</u>

Qualified Claimants will release all federal, state, and local wage and hour claims relating to their employment as CSRs, back to the full extent of the federal and state statutes of limitations and continuing through the date of full execution of the Settlement Agreement, including claims for unpaid overtime wages, liquidated damages, penalties, attorney's fees, and interest.  Ex. 1 (Settlement Agreement) ¶ IV(A), Ex. A (Notice Packet). Potential Collective Members who do not submit a Consent to Join and Release Form will not release their wage and hour claims.

## IV.  <u>Settlement Awards</u>

Each Putative Collective Member will be allocated a proportionate share of the Net Fund based on his or her points, which are assigned based on the number of weeks and hours he or she worked during the relevant period according to PNC's records.  Ex. 1 (Settlement Agreement)

---

[4] Qualified Claimants are Plaintiffs and Putative Collective Members who timely return a Consent to Join and Release Form.  *Id.* ¶ III(A)(9).

¶ III(F)(2).  To compute each Putative Collective Member's share of the Net Fund, the

Settlement Claims Administrator will divide each Putative Collective Member's points by the

total number of points for all Putative Collective Members, and multiply that fractional amount

by the amount of the Net Fund.  *Id*. ¶ III(F)(2)(c).  The estimated amount of each Putative

Collective Member's share of the Net Fund will be disclosed to the Putative Collective Member

in the Notice Packet.  *Id*. ¶ III(F)(2)(c)(iii), Ex. A.

## V.   <u>Service Payment</u>

Under the Settlement Agreement, subject to Court approval, Plaintiffs each request

service payments of $8,333.33 each, on behalf of themselves and the Opt-in Plaintiff, in

recognition of the services they rendered to the Putative Collective Members in obtaining the

benefits of the settlement, as well as the risks they took in doing so.  Ex. 1 (Settlement

Agreement) ¶ III(F)(3).

## VI.   <u>Attorneys' Fees and Litigation Costs</u>

Subject to Court approval, the Settlement Agreement provides for one-third of the Gross

Fund as attorneys' fees, plus reimbursement of actual out-of-pocket costs of $13,626.10.  Ex. 1

(Settlement Agreement) ¶ III(F)(4); Swartz Decl. ¶ 36; Declaration of Gregg I. Shavitz ("Shavitz

Decl.") (attached as Ex. 2 to the Swartz Decl.) ¶ 12; Turner Decl. ¶ 38; Johnston Decl. ¶ 38.

## VII.   <u>Settlement Claims Administration</u>

The Parties have retained Rust Consulting, Inc. ("Rust"), an experienced wage and hour

claims administrator, to serve as the Settlement Claims Administrator.  Ex. 1 (Settlement

Agreement) ¶ III(D)(1); Turner Decl. ¶ 51; Johnston Decl. ¶ 51.  The Settlement Claims

Administrator's fees, which are estimated to be no more than $67,250.00, will be paid from the

Gross Fund.  Ex. 1 (Settlement Agreement) ¶ III(D)(3).  These fees and costs will cover

preparing the notice; preparing and launching a website where Putative Collective Members may

review information regarding the settlement and submit their Consent to Join and Release Forms; determining the amount of payments due to Putative Collective Members along with the amount of all payroll tax deductions to be withheld; claims processing; providing regular status reports to Defendants' and Plaintiffs' Counsel regarding the status of the notice process; cutting checks and mailing them to Qualified Claimants and Plaintiffs; establishing a Qualified Settlement Fund; wiring Court-approved attorneys' fees and costs to Plaintiffs' Counsel; providing W-2s and 1099 forms as required under the Settlement Agreement and applicable law; establishing, controlling, and maintaining the Settlement Fund; and filing all required tax returns for the Settlement Fund and paying all taxes due. *Id.* ¶ III(D)(2).

## ARGUMENT

### I.     A One-Step Approval Process Is Standard for FLSA Settlements.

Throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").[5]  *Brown v. TrueBlue, Inc.*, No. 10 Civ. 00514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" (citation omitted)). This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 00192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23

---

[5] *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).").

class actions are not necessary in the FLSA collective action context."). "In contrast to class actions brought pursuant to Federal Rule of Civil Procedure 23, the FLSA requires collective action members to affirmatively opt in to the case." *Spellman v. Am. Eagle Exp., Inc.*, No. 10 Civ. 1764, 2011 WL 4102301, at *1 n.1 (E.D. Pa. May 18, 2011). Where, as here, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (the "'opt-in' requirement . . . is the most conspicuous difference between the FLSA collective action device" and a Rule 23 class action).

II.   **The Court Should Approve the Parties' Negotiated Settlement Agreement.**

Courts in the Circuit review FLSA settlements pursuant to the standards outlined in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354-55. *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12 Civ. 6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (in the absence of Third Circuit precedent "district courts in this circuit have referred to the considerations set forth in *Lynn's Food Stores*"). A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *Id.* at *2 (alterations in original) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Bettger v. Crossmark, Inc.*, No. 13 Civ. 2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Once the court is satisfied that an agreement resolves a bona fide dispute, the next step is a two-part analysis: "first, the court assesses whether the agreement is fair and reasonable to the

plaintiff employee; second, it determines whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." *Bettger*, 2015 WL 279754, at *4 (internal quotation marks and citation omitted).  While the Third Circuit has not directly addressed the considerations for determining the fairness and reasonableness of settlement agreements in FLSA collective actions, courts in the Circuit have applied the factors used for approving Rule 23 class settlements.  *See, e.g.*, *Owens v. Interstate Safety Serv., Inc.*, No. 17 Civ. 0017, 2017 WL 5593295, at *2 (M.D. Pa. Nov. 21, 2017) (district courts in the Third Circuit look to "the factors set out by the Third Circuit for approving class action settlements" when approving FLSA settlements).  Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the [collective] action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (ellipses and citations omitted) (the "*Girsh* Factors").  As discussed below, because the proposed Settlement Agreement resolves a bona fide dispute, represents a fair and reasonable resolution of that dispute in light of the *Girsh* Factors, and does not frustrate the goals of the FLSA, it should be approved.

### A.   The Settlement Agreement Is a Compromise of a Bona Fide Dispute.

The settlement resolves a bona fide dispute.  Plaintiffs allege that they routinely worked off-the-clock, before, during, and after their shifts, and were not paid for all of the time that they worked. Swartz Decl. ¶ 16; Turner Decl. ¶ 9; Johnston Decl. ¶ 9. Defendants dispute the number of hours Plaintiffs allege they worked and contend that their timekeeping policies and practices

10

ensure that Plaintiffs properly record their time such that they are compensated for all hours worked. Swartz Decl. ¶ 16; Turner Decl. ¶ 32; Johnston Decl. ¶ 32. Accordingly, the proposed settlement resolves a "bona fide" dispute of factual legal issues.

      **B.**      <u>**The Settlement Is Fair, Reasonable and Adequate.**</u>

Application of the *Girsh* Factors also weighs in favor of a finding that the Settlement is fair and reasonable.[6]

<u>First</u>, the complexity of the case and the likely duration of the litigation supports settlement approval. Specifically, absent settlement, the parties would have had to litigate nearly every aspect of Plaintiffs' claims, including the number of hours Plaintiffs and the Putative Collective Members worked off-the-clock. Defendants dispute the number of hours that Plaintiffs allege they and the Putative Collective Members worked and would contend that any such hours are non-compensable because they are *de minimis*. *See, e.g.*, *Hubbs v. Big Lots Stores, Inc.*, 15 Civ. 01601, 2018 WL 5264143, at *4 (C.D. Cal. July 11, 2018) ("Periods of approximately ten minutes per day may be treated as *de minimis* when there is not a practical, administrative means to record or calculate the time. This includes if the amount varies from day to day." (citing *United States v. Lindow*, 738 F.2d 1057, 1063 (9th Cir. 1984))).  "Settlement of the case now, while it is still in the earlier stages, allows both parties to avoid further legal

---

[6] Notwithstanding that the settlement agreement satisfies the *Girsh* factors, because the parties are represented by experienced counsel, employed an experienced mediator to assist them in negotiating their settlement, and reached their settlement agreement through the mediation process, the Court may begin with the presumption that the settlement is fair and reasonable. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 18 Civ. 01007, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019) ("[I]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." (internal quotation marks and citation omitted)).

expenses that would be significant if this case proceeded to trial and then potentially to appeals."
*In re Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3.

Second, the stage of proceedings and amount of discovery completed, *Girsh*, 521 F.2d at
156, weighs in favor of approval. As noted above, the settlement of the Actions early on
conserves the parties' and the Court's resources. With respect to the amount of discovery
completed, the parties exchanged sufficient information during the settlement process to permit
all sides to evaluate the risks of further litigation. *See supra*, II.A; Swartz Decl. ¶ 19; Turner
Decl. ¶¶ 26, 36; Johnston Decl. ¶¶ 26, 36. *See Acevedo v. Brightview Landscapes, LLC*, No. 13
Civ. 2529, 2017 WL 4354809, at *10-11 (M.D. Pa. Oct. 2, 2017) (finding the third *Girsh* Factor
weighed in favor of approval where parties had engaged in informal exchange of data and
documents in advance of mediation); *Kapolka*, 2019 WL 5394751, at *5 (same). Moreover, prior
to taking on these actions, Plaintiffs' Counsel conducted a thorough investigation into the merits
of the case, performing in-depth interviews with Plaintiffs to understand their hours, wages and
timekeeping practices, and conducted background research on Defendants' corporate structure
and facilities. Swartz Decl. ¶ 17; Turner Decl. ¶ 24; Johnston Decl. ¶¶ 24-25. Thus, "the parties
had an adequate appreciation of the merits of the case before negotiating" a resolution of the
claims. *Deitz v. Budget Renovations and Roofing, Inc.*, No. 12 Civ. 0718, 2013 WL 2338496, at
*6 (M.D. Pa. May 29, 2013) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent
Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).

Third, settlement is appropriate because a trial on the merits would involve significant
risks for the Plaintiffs as to both liability and damages.  Although Plaintiffs believes they could
ultimately establish Defendants' liability, Defendants could prevail on their *de minimis* defense.
Defendants would also contend that their timekeeping practices and policies demonstrate their

12

good faith effort to comply with the FLSA, which would preclude an award of liquidated damages. Turner Decl. ¶ 33; Johnston Decl. ¶ 33.

Fourth, although Plaintiffs believe that they would prevail on any motion for conditional certification, including on the fully-briefed motion in the *Minor* Action, there is a risk that they would not succeed in maintaining a collective through trial.  Defendants contend that the differences among CSRs' job duties, tasks, start times, supervision, job locations, and methods of time entry preclude conditional certification, or would warrant decertification of any collective. Swartz Decl. ¶ 24; Turner Decl. ¶ 32; Johnston Decl. ¶ 32.  Although Plaintiffs disagree with these claims, defendants have prevailed on such arguments.  *See Layton v. Percepta, LLC*, No. 17 Civ. 1488, 2018 WL 5492850, at *4 (M.D. Fla. Sept. 21, 2018) (finding "individualized inquiries" precluded certification of putative class of call center employees alleging off-the-clock work), *report and recommendation adopted*, 2018 WL 5442729 (M.D. Fla. Oct. 29, 2018).

Fifth, the Gross Fund represents a good recovery, especially in light of the aforementioned litigation risks that Plaintiffs face.  By Plaintiffs' estimate, the Gross Fund represents more than 90% percent of Putative Collective Members' expected recovery.  Swartz Decl. ¶ 25. If Defendants were to prevail on their *de minimis* defense, the Putative Collective Members would likely have recovered nothing.

Because the *Girsh* Factors support the reasonableness of the settlement,[7] the settlement should be approved.

---

[7] The second *Girsh* factor—"the reaction of the class to the settlement"—is "not directly applicable in the context of an FLSA collective action, where the settlement class will consist of voluntary opt-in plaintiffs, all of whom wish to settle this matter in accordance with the terms of the proposed settlement agreement." *Kapolka*, 2019 WL 5394751, at *4 (quoting *Deitz*, 2013 WL 2338496, at *6). As to the seventh *Girsh* Factor, although Defendants may have been able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*,

C.        **The Settlement Furthers the Goals of the FLSA**.

The public nature of the settlement assists with general FLSA compliance.  Unlike

confidential settlements, the Settlement Agreement does not frustrate the "implementation of the

FLSA in the workplace." *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3.

It is publicly available and there is no confidentiality provision.  Plaintiffs may discuss the

litigation and their claims with other workers, furthering the informational objectives of the

FLSA. *See id.* (settlement agreement did not frustrate the purposes of the FLSA where the

plaintiffs would "be permitted to discuss the matter with fellow employees and others").

III.     **The Service Awards Should Be Approved as Fair and Reasonable.**

Plaintiffs request modest service payments of $8,333.33 each, for themselves and one

Opt-In Plaintiff.  Ex. 1 (Settlement Agreement) ¶ III(F)(3). Courts routinely approve service

awards equal to or greater than the awards requested here.  *See, e.g.*, *Creed v. Benco Dental

Supply Co.*, No. 12 Civ. 01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving

award of $15,000 to named plaintiff in FLSA collective action settlement); *Kapolka*, 2019 WL

5394751, at *13 (collecting cases and noting service awards range up to $12,500).[8]

Service awards serve the important purpose of compensating plaintiffs for the time and

effort expended in assisting the prosecution of the litigation, the risks incurred by becoming a

litigant, and any other burdens sustained by plaintiffs, and are commonly awarded to those who

serve the collective's interests.  *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d

---

No. 09 Civ. 10211, 2011 WL 2208614, at *7 (E.D.N.Y. June 12, 2013) (citation and internal
quotation marks omitted).  Accordingly, the second and seventh factor do not preclude the Court
from approving the settlement.

[8] *See also Koszyk v. Country Fin. a/k/a CC Servs.*, *Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at
*3 (N.D. Ill. Sept. 16, 2016) ($10,000 service awards for assistance to collective early in
lawsuit); *Hernandez v. Merrill Lynch & Co.*, *Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10
(S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $12,500 to class
representatives and $4,000 to an opt-in plaintiff in wage and hour action).

Cir. 2011) ("The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." (citation and internal quotation marks omitted)); *see also Kapolka*, 2019 WL 5394751, at *13 (service awards "reward the public service of contributing to the enforcement of mandatory laws").

Here, the Plaintiffs and Opt-in Plaintiff undertook substantial financial, reputational and personal risks. They assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012). They risked retaliation from future employers for the benefit of the Putative Collective Members. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

Plaintiffs and the Opt-in Plaintiff also took substantial actions to protect the interests of Potential Collective Members. Plaintiffs and the Opt-in Plaintiff sat for extensive pre-suit interviews, provided documents crucial to establishing their claims and the claims of the collective, reviewed the claims presented, helped Plaintiffs' counsel prepare for the mediation by providing information relevant to the claims and Defendants' defenses, made themselves available for the mediation, and reviewed the Settlement Agreement. Swartz Decl. ¶ 27; Turner Decl. ¶ 49; Johnston Decl. ¶ 49. Courts in this circuit have approved service awards for similar activities. *See, e.g.*, *Fein v. Ditech Fin., LLC*, No. 16 Civ. 660, 2017 WL 4284116, at *11 (E.D. Pa. Sept. 27, 2017), at *11 (awarding service payments where the plaintiffs "provided documents to class counsel, provided information concerning their experiences and Defendant's practices,

supplied testimony and documents critical to investigation of the Class Members' claims, and made themselves available for the mediation").

## IV.     <u>The Court Should Approve the Proposed Settlement Notice and Claim Form.</u>

The Court should approve the proposed Notice of Settlement and Consent to Join and Release Form (the "Notice Packet") because it provides accurate and timely notice of the settlement that will allow Putative Collective Members to make an informed decision regarding whether to participate in this action.  *See* Ex. 1 (Settlement Agreement) at Ex. A.  The Notice Packet sufficiently informs Putative Collective Members of the terms of the settlement, including the allocation formula, the opt-in process, and the scope of the release.  *See Keller v. TD Bank, N.A.*, No. 12 Civ. 5054, 2014 WL 5591033, at *3 (E.D. Pa. Nov. 4, 2014) (approved notice and claim informed participants of the settlement, release of claims, allocation formula, and instructions for submitting a claim form); *see also Morris v. Affinity Health Plan, Inc*., No. 09 Civ. 1932, 2011 WL 6288035, at *3 (S.D.N.Y. Dec. 15, 2011) ("The Proposed Notice is appropriate because it describes the terms of the settlement [and] informs the class about the allocation of attorneys' fees . . ."); *In re Milos Litig*., No. 08 Civ. 6666, 2010 WL 199688, at *1 (S.D.N.Y. Jan. 11, 2010) (notice should provide "accurate and timely notice concerning the pendency of the collective action, so that an individual receiving the notice can make an informed decision about whether to participate." (internal quotation marks omitted) (alterations in original)).

## V.     <u>The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable.</u>

Plaintiffs' Counsel should be awarded their requested fee of one-third of the settlement fund.  The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action."  29 U.S.C. § 216(b).  "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases."  *Kapolka*, 2019 WL 5394751, at *7.  "In determining

16

what constitutes a reasonable percentage fee award, a district court must consider several factors,

'many of which are similar to the *Girsh* factors' discussed above." *Id*. (quoting *In re AT & T*

*Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Those factors are:

> 1) the size of the fund created and the number of beneficiaries; 2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the time devoted to the case by plaintiffs' counsel; 7) the awards in similar cases; 8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; and 9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.

*Kapolka*, 2019 WL 5394751, at *7.  These factors are satisfied for the following

reasons:[9]

First, the requested fee of one-third of the Gross Fund ($916,666.67) falls well within the

range of awards typically granted for funds of a similar size.  *See Kapolka*, 2019 WL 5394751, at

*8 (collecting cases and noting that "[f]ee awards ranging from thirty to forty-three percent have

been awarded in cases with funds ranging from $400,000 to $6.5 million" (internal quotation

marks omitted)). The Gross Fund is not a "mega-fund" that would require a reduction in the

requested percentage because it is grossly disproportionate to the "efforts of counsel."  *In re*

*Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002).[10]

---

[9] "These fee award factors need not be applied in a formulaic way . . ." *Arrington v. Optimum Healthcare IT, LLC.*, 17 Civ. 3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018). Here, like the second *Girsh* factor, factor 2 – which looks to whether the collective members support the settlement – is not directly applicable because Putative Collective Members who do not wish to participate in the settlement are automatically excluded if they do not return their Consent to Join and Release Forms.

[10] "As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases."  *In re Cendant Corp.*, 232 F. Supp. 2d at 337. "The Circuit has explained that the 'basis for this inverse relationship is the belief that 'in many instances [such as, for

Second, Counsel are experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this one. Swartz Decl. ¶¶ 4-14; Shavitz Decl. ¶¶ 4-11; Turner Decl. ¶¶ 5-6; Johnston Decl. ¶¶ 5-6.  The award is reasonable because counsel resolved the *Minor* and *Herbin* Actions expeditiously and in doing so provided a good benefit to the Putative Collective Members who will not be required to await years of litigation before receiving a payment.  *Kapolka*, 2019 WL 5394751, at *9 (finding "early settlement of potentially costly litigation" weighed in favor of settlement where "[c]onsiderable judicial time and resources were no doubt conserved by the parties' resolution of this case before dispositive motions or trial").

Third, the requested fee award is reasonable in light of the risks of nonpayment that Plaintiffs' Counsel faced.  Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a substantial risk that they would not be paid.  Swartz Decl. ¶ 31; Shavitz Decl. ¶ 18; Turner Decl. ¶ 46; Johnston Decl. ¶ 46.  As discussed above, in II.B, *supra*, Plaintiffs faced significant legal hurdles in proving liability and damages and "could have lost everything" they invested.  *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.); *Keller*, 2014 WL 5591033, at *15 (finding factor weighed in favor of the requested fee where "there was some risk that Plaintiffs' claims would fail").

Fourth, with respect to the complexity of the litigation and settlement, off-the-clock claims by their nature involve unrecorded time, and required Plaintiffs to construct a damages model during settlement discussions that could account for the uncompensated time. If the case

---

example, certain "mega-funds"] the increase [in recovery] is merely a factor of the size of the class' and has no direct relationship to the efforts of counsel.'" *Id.* (quoting *In re Prudential*, 148 F.3d at 339) (second modification in original).  However, settlement awards less than $54 million are not mega-funds.  *Id.*

had not been resolved, Counsel would have had to spend significant resources proving the amount of time putative collective members worked off-the-clock. The Actions are additionally complex because they involve the claims of a nationwide putative collective of CSRs who may have different tasks, start times, job locations, and methods of time entry which, Defendants would contend, may bear on liability and damages.[11] *See supra*, II.B.

Fifth, Plaintiffs' Counsel have spent significant time – collectively 587.7 hours – investigating, litigating, and working toward the resolution of these claims.  Swartz Decl. ¶ 28; Shavitz Decl. ¶ 14; Turner Decl. ¶¶ 24-27, 31, 43; Johnston Decl. ¶¶ 24-27, 31, 43.  Plaintiffs' Counsel estimate that they will also devote additional hours to settlement-related tasks, including communicating with Putative Collective Members and monitoring the claims process, after the Court approves the settlement.  Swartz Decl. ¶ 32; Shavitz Decl. ¶ 19; Turner Decl. ¶¶ 43, 45; Johnston Decl. ¶¶ 43, 45.

Sixth, Plaintiffs' Counsel's requested award of one-third of the settlement fund comports with awards approved by other courts in the Third Circuit. *See Kapolka*, 2019 WL 5394751, at *10 ("Courts in the Third Circuit have approved FLSA collective and class action settlements providing for fee awards of 20-45%") (collecting cases); *Arrington*, 2018 WL 5631625, at *10 (one-third of the gross settlement amount is reasonable in common fund cases).

Seventh, "All benefits obtained by Plaintiffs through the proposed settlement can be attributed to the efforts of counsel, rather than to government agencies or other groups." *Kapolka*, 2019 WL 5394751, at *10.

---

[11] Courts have also found that actions that involve the litigation of wage and hour class and collective actions are "admittedly complex." *Leap v. Yoshida*, No. 14 Civ. 3650, 2016 WL 1730693, at *10 (E.D. Pa. May 2, 2016) (finding factor weighed in favor of fee award where "the case is admittedly complex due to the combination of FLSA and class action claims").

Eighth, with respect to the "percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained," *Kapolka*, 2019 WL 5394751, at *7, before initiating this litigation, the *Herbin* Plaintiffs agreed that counsel would request no more than one-third of any future recovery, plus actual out of pocket costs, while the *Minor* Plaintiffs agreed that their counsel would be entitled to a fee of 40% of the total recovery.  Swartz Decl. ¶ 29; Shavitz Decl. ¶ 12; Turner Decl. ¶ 46; Johnston Decl. ¶ 46. The requested award is consistent with Plaintiffs' and their Counsel's negotiated contingent fee agreement.

Finally, although the Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method," *see In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (quoting *In re Prudential*, 148 F.3d at 333), courts need not engage in a lodestar inquiry with "mathematical precision" and can instead "rely on summaries submitted by the attorneys" rather than "actual billing records." *Id.* at 306-307.  Here, Plaintiffs' Counsel have provided summaries of their billing rates and hours and lodestar calculations using each firm's standard hourly rates.  Swartz Decl. ¶¶ 33-35; Shavitz Decl. ¶ 17; Turner Decl. ¶¶ 42-43; Johnston Decl. ¶¶ 42-43.  Counsel's multiplier is 3.10.  Swartz Decl. ¶ 28, Ex. 4; Shavitz Decl. ¶ 14; Turner Decl. ¶ 43; Johnston Decl. ¶ 43.  This number is "well within the [1.0 to 4.0] range frequently awarded in common fund cases in this Circuit."  *Keller*, 2014 WL 5591033, at *16 (approving multiplier "slightly above 3" and noting that multipliers "within the range of one to four [are] frequently awarded in common fund cases in the Third Circuit" (citing *In re Prudential*, 148 F.3d at 341)); *Arrington*, 2018 WL 5631625, at *10 (approving multiplier of 5.3 and noting that counsel "should not be penalized for settling the case early in the litigation").

**VI.**     **Plaintiffs' Counsel Is Entitled to Recover Their Reasonable Costs.**

In addition to the requested fee award, Plaintiffs' Counsel's request for reimbursement of their reasonable out-of-pocket costs in the amount of $13,626.10 expended in litigating and settling this matter, including filing fees, mediation expenses, legal research, photocopies, and postage, is reasonable and should be approved.  *See* Swartz Decl. ¶ 36; Shavitz Decl. Ex. A; Turner Decl. ¶¶ 43, 48; Johnston Decl. ¶¶ 43, 48.  These costs shall be paid from the Gross Fund. Ex. 1 (Settlement Agreement) ¶ III(F)(4).  Courts in the Third Circuit routinely approve reimbursement of such costs.  *See, e.g.*, *Keller*, 2014 WL 5591033, at *16 (approving complaint filing and mediation costs); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (approving costs for photocopies, telephone and fax charges, postage and express mail charges, and computer- assisted legal research).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement; (2) approving the proposed Notice Packet and directing its distribution; (3) approving the requested Service Awards; (4) approving Plaintiffs' requested attorneys' fees and costs; (5) incorporating the terms of the Settlement Agreement; and (6) dismissing the Actions.

Date: January 21, 2020                            Respectfully submitted,
                                                  By: */s/ Justin M. Swartz*

                                                  **OUTTEN & GOLDEN LLP**
                                                  Justin M. Swartz*
                                                  Chauniqua D. Young**
                                                  685 Third Avenue, 25th Floor
                                                  New York, New York 10017
                                                  Telephone: (212) 245-1000
                                                  E-mail: jms@outtengolden.com
                                                  E-mail: cyoung@outtengolden.com

**CARLSON LYNCH, LLP**
Gary F. Lynch
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
E-mail: glynch@carlsonlynch.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
Paolo Meireles*
Logan A. Pardell*
951 Yamato Road
Boca Raton, Florida 33431
Telephone: (561) 447-8888
E-mail: gshavitz@shavitzlaw.com
E-mail: pmeireles@shavitzlaw.com
E-mail: lpardell@shavitzlaw.com

*Attorneys for the Herbin Plaintiffs and the Putative Collective*

**SOMMERS SCHWARTZ, P.C.**
Matthew L. Turner**
Rod M. Johnston*
One Towne Sq., Ste. 1700
Southfield, MI 48076
(248) 355-0300
E-mail: rjohnston@sommerspc.com
E-mail: mturner@sommerspc.com

*Attorneys for the Minor Plaintiffs and the Putative Collective*

*Admitted *Pro Hac Vice*
**Pro hac vice* motion forthcoming